UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASON J. SCHULTZ,

      Plaintiff,

v.                                                      No. 16-cv-11774-PBS

KEITH R. HOULE, et al.,

      Defendants.

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 42)**

CABELL, U.S.M.J.

      Plaintiff Jason Schultz, who appears pro se, is a prisoner at the Souza-Baranowski Correctional Center in Shirley, Massachusetts. He seeks relief under 42 U.S.C. § 1983 based upon claims that several Massachusetts Department of Corrections ("DOC") officers violated his Eighth Amendment right to be free from cruel and unusual punishment when they used excessive force and a chemical agent to remove him from his cell. The defendants have moved for summary judgment and the motion has been referred to this court for a report and recommendation. For the reasons that follow, I recommend that the motion be granted in part and denied in part.

I. **THE PARTIES**

The plaintiff is a prisoner at MCI Shirley. Defendant Glen Doher is a corrections officer there with the rank of Captain. Defendant Keith Houle is a corrections officer with the rank of Sergeant. Defendants Robert Bashaw and Chris Amenta are corrections officers. Defendant Osvaldo was at all relevant times the Superintendent of the facility.

II. **RELEVANT FACTUAL BACKGROUND**

As none of the parties have submitted a traditional statement of facts, the court begins by describing, briefly, the major sources of the facts recited below. The defendants' memorandum "incorporates by reference" affidavits submitted by defendants Doher, Houle, Bashaw and Amenta. Defendant Doher's affidavit in turn incorporates several other documents, including among them separate incident reports written by defendants Houle, Bashaw, and Amenta. Each officer in turn adopts and authenticates his own report through his own separate affidavit. Defendant Doher also appends the report of a social worker who spoke with the plaintiff prior to the removal, the report of a nurse who treated the plaintiff after the removal, and a video of the removal incident itself. The reports of the nurse and social worker are arguably inadmissible for Rule 56 purposes where neither has submitted an affidavit, but their interactions with the plaintiff are also captured on the video.

2

As for the plaintiff, he submits two documents, including (1) a "Plaintiff's Statement of Disputed Factual Issues" and (2) a "Declaration in Opposition to Defendants (sic) Motion for Summary Judgment." Although the statement of disputed issues is "short and concise," it is not "supported by appropriate record citations" required by Local Rule 56.1(a). However, the plaintiff repeats the principal alleged disputed facts in his Declaration, and that document, while containing some factual assertions not supported in the record, has been verified by the plaintiff pursuant to 28 U.S.C. § 1746. Accordingly, the court will rely on assertions in these documents to the extent they appear to be based on the plaintiff's personal knowledge.

Unless otherwise indicated, the facts recited in this section are either undisputed or clearly supported by the record.

A. **The Use of Force Plan**

On May 21, 2015, DOC staff approached the plaintiff and another inmate to request that they leave their current cells to be "double bunked" together in a single cell. When the plaintiff refused to do so, DOC staff devised and proposed a "use of force" plan to defendant Vidal as Superintendent of the facility. (Doher Aff., at ¶ 3). A "use of force" plan is the organized process by which correction officers gain entry into a cell or other area to extract a disruptive or non-compliant inmate by the use of physical force. (Houle Aff., at ¶ 3).

3

Depending on the circumstances, a planned use of force may involve the use of a chemical agent. (Id., at ¶ 4). Any use of a chemical agent, including the use of a liquid, powder, or other substance, must be approved by the Medical Director of the facility following a review of the inmate's medical file to ensure that the use of the agent is not medically contraindicated. (Id.). The Medical Director, or their designee, completes a "use of chemical agents" form that indicates any contraindications to the use of certain chemical agents and any limitations on their use. (Id.).

In anticipation of the forced move, the Medical Director was consulted to determine whether chemical agents were contraindicated. The Medical Director reviewed the plaintiff's medical file and advised that while there were no medical contraindications to the use of chemical agents, he recommended that a certain chemical agent, known as Oleoresin Capsicum fogger ("OC fogger"), be used due to the plaintiff's pre-existing medical condition as an asthma sufferer. (Houle Aff., at ¶ 8). Defendant Vidal approved the use of force plan. (Doher Aff., at ¶ 3).

## B. The Forced Removal

The parties agree that DOC officers convened outside the plaintiff's cell at around 10:40 a.m., and thereafter proceeded to forcibly remove the plaintiff from his cell. They offer differing versions of the pertinent details, however.

i.   _The Defendants' Version_

According to the defendants, Houle informed the plaintiff that the Superintendent had authorized the use of force, including the use of a chemical agent, to remove the plaintiff from his cell. (Houle Aff., at p. 5; Doher Aff., at Ex. B, p. 5).  Houle asked the plaintiff to comply with an order to come out of his cell but the plaintiff refused to do so.  (Houle Aff., at p. 5-6).  Moreover, the plaintiff had bandaged his wrists to prevent the staff from handcuffing him, had placed a t-shirt around his neck as a mask in the event that a chemical agent was used, and had wedged a blanket in the doorway of his cell.  (Id., at p. 6).

Houle ordered the plaintiff three times to back away from the door of the cell so he could be placed in restraints but the plaintiff refused on all three occasions (Id.).  Houle then administered a "one-second" burst of an Oleoresin Capsicum (OC) fogger into the cell and again ordered the plaintiff to back away from the cell door. (Id.).  The plaintiff again refused and the team was then deployed to remove the plaintiff from his cell. (Id.).

According to Bashaw, as he entered the cell, the plaintiff attempted to "sweep" his legs out by kicking at him.  (Doher Aff., at Ex. B, p. 5). Bashaw jumped over the plaintiff to avoid falling and made contact with the plaintiff by applying "downward pressure" to secure him to the floor.  (Id.).  Amenta then secured the

plaintiff's arms and wrists by applying "downward pressure" so he could be handcuffed. (Id.). Once secured in restraints, the plaintiff was helped to his feet and escorted out of the cell "under his own power." (Id.).

### ii. *The Plaintiff's Version*

The plaintiff contends that when the officers administered the chemical agent, it forced him to lay on the floor, face down. (Id., at ¶ 9). He was thus already on the floor when the defendants entered, and they then without warning beat him before placing restraints on him. Defendant Amenta kicked him in the face several times while defendant Bashaw straddled his back and defendant Houle looked on from the cell doorway. (Id., at ¶¶ 6-8). The plaintiff did not resist or threaten the officers for fear of escalating the assault. (Id., at ¶¶ 10, 12).

### C. **Subsequent Medical Treatment**

Once the plaintiff was removed from his cell, he was escorted to the "sally port area," strip searched for contraband, and then escorted to the trauma room for treatment. (Houle Aff., at p. 7; Doher Aff., at Exh. B, p. 5). The plaintiff refused a shower to wash off the chemical agent or to have his eyes flushed. (Houle Aff., at p. 8; Doher Aff., at Exhibit B, p. 5). After being assessed for any physical injuries and receiving treatment for a contusion over his left eye, the plaintiff was escorted to the

Health Service Unit and then placed in a cell.  (Houle Aff., at p.
9-10; Doher Aff., at Ex. B, p. 5).

### III. THE COMPLAINT

The complaint asserts five counts pursuant to 42 U.S.C. §
1983:  (1) Count I alleges that defendants Houle, Bashaw, and
Amenta used excessive force against the plaintiff in removing him
from his cell; (2) Count II alleges that defendants Houle, Doher
and Vidal were deliberately indifferent to the plaintiff's serious
medical needs; (3) Count III alleges that defendant Houle failed
to intervene to stop the excessive force used by defendants Amenta
and Bashaw; (4) Count IV alleges that defendant Doher failed to
train his subordinates on the proper use of force when executing
a use of force plan; and (5) Count V alleges that defendant Vidal
failed to discipline his subordinates for using excessive force.

### IV.  LEGAL STANDARD

When the court is presented with a motion for summary
judgment, it shall grant it "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled
to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The
moving party bears the initial burden of "assert[ing] the absence
of a genuine issue of material fact and then support[ing] that
assertion by affidavits, admissions, or other materials of
evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d
15, 19 (1st Cir. 2003).  Once the moving party meets that burden,

in order to avoid summary judgment, the opposing party must "show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006)(*quoting Ingram v. Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005)). Indeed, the opposing party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006) (*quoting Triangle Trading Co. v. Robroy Indus. Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)).

When determining whether summary judgment is appropriate, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Id.* (*citing Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000)). The Federal Rules require "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(citing Fed. R. Civ. P. 56)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007)(*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted).

## V.  ANALYSIS

As a threshold matter, the defendants argue that defendant Vidal, who is charged in Counts II and V, is entitled to dismissal of the complaint against him because the plaintiff has failed to perfect service on him.  See Dkt. No. 17 ("US Marshal Process Receipt and Return for Superintendent Osvaldo Vidal returned undelivered").  The court agrees.  "Under the federal rules, service of process must take place within 120 days after the complaint is filed, or the court must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Morales v. Spencer*, 52 F. Supp. 3d 362, 364 (D. Mass. 2014).  The plaintiff does not dispute that service was never perfected on defendant Vidal, and indeed does not address the issue at all in his opposition.  I recommend therefore that the complaint be dismissed against defendant Vidal for failure to effect proper service under Fed. R. Civ. P. 4(m).

With respect to the remaining defendants, the complaint, as noted above, asserts five counts under 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  In

order to prevail under section 1983, the plaintiff must bring forth evidence that the defendants (1) acted under "color of state law," and (2) deprived [the] plaintiff of a right secured by the Constitution or the laws of the United States. *Budnick v. Baybanks, Inc.*, 921 F. Supp. 30, 32 (D. Mass. 1996).

## A. Count I – Excessive Force

The plaintiff alleges that defendants Houle, Bashaw, and Amenta used excessive force in removing the plaintiff from his cell. He alleges specifically that Amenta, wearing boots, repeatedly kicked him in the face near the left orbital area while Bashaw pinned his body down. Where an excessive force claim arises in the context of an inmate's interactions with correction officers, it is most properly characterized as one invoking the protections of the "cruel and unusual punishment" clause of the Eighth Amendment. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Maraj v. Massachusetts*, 836 F. Supp. 2d 17, 26 (D. Mass. 2011).

The relevant inquiry when such a claim is made is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Orwat v. Maloney*, 360 F. Supp. 2d 146, 153 (D. Mass. 2005)(*quoting Hudson v. McMillian*, 503 U.S. 1, 6-7(1992)). "Factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity

of a forceful response are relevant in determining whether a prison official used excessive force." *Perry v. Dickhaut*, 125 F. Supp. 3d 285, 296 (D. Mass. 2015)(*quoting Hudson*, 503 U.S. at 7).

Applied here, the court finds that there is a genuine dispute of fact as to whether defendants Amenta and Bashaw used force in a good faith effort to effect the plaintiff's compliance or to maliciously and sadistically cause him harm. The record demonstrates that defendants Bashaw and Amenta made physical contact with the plaintiff while defendant Houle stood in the doorway. The defendants maintain that a forced removal was wholly justified because the plaintiff resisted removal by placing a blanket in the doorway, refused to follow orders to back away from the door of the cell, and attempted to trip Bashaw by kicking his legs once the officers gained entry into the cell. The defendants also deny that anyone kicked or struck the plaintiff in the face as he contends. The plaintiff in contrast contends that he was already passively lying on the ground face down when the officers entered and did not resist even as one officer repeatedly kicked him and another straddled him. In that regard, the plaintiff alleges injuries to his left orbital area that are consistent with his version of events. Because a reasonable juror crediting the plaintiff's allegations could conclude that "such use of [force] on a defenseless and non-resistant inmate was *non-deminimis* force applied maliciously and sadistically for the very purpose of

11

causing harm, rather than in a good-faith effort to maintain or restore discipline," there is a dispute of material fact, rendering summary judgment inappropriate. *See Perry*, 125 F. Supp. 3d at 297 (finding excessive force where the plaintiff was not resisting forced entry or being placed on restraints)(internal citations omitted).

To be sure, the defendants contend that the video of the incident "demonstrates that [the plaintiff's] claims are a visible fiction." The court cannot readily agree; the video does tend to support the defendants' contention that they were justified in executing a forced removal but it does not definitively show that the removal did not involve excessive force. More particularly, the video shows that the plaintiff refused to comply with a prior request that he agree to move to another cell. It also depicts that when officers did arrive at his cell he had wedged a blanket between the door and door jamb, making it difficult to fully open the cell door. It also shows that the plaintiff was asked repeatedly prior to the officers' entry to back up to the door so that officers could place cuffs on his wrists through a small opening, but that he did not appear to comply.

The problem with the video, though, is that the officers' specific actions inside the cell are not always clearly visible because the videographer was stationed outside the cell and defendant Houle was positioned in front of him in the doorway,

12

partially blocking and obstructing the view of the floor area of the cell.   Consequently, although the video depicts that four officers entered the cell to effect the forced removal, the first several seconds of activity are obstructed from view and it is impossible to see what any of the officers are doing.   When at some point the camera angle captures what is happening, the video shows officers on or near the ground, presumably on top of or around the plaintiff, but the plaintiff cannot be clearly seen until after the physical encounter has come to pass and the plaintiff is being escorted out of the cell.   In terms of whether the plaintiff resisted or did not resist, or whether defendant Amenta did or did not kick the plaintiff when the officers first entered, or whether any officer did or did not strike the plaintiff at any time, the video simply does not reveal what occurred, and thus does not affirmatively reveal the plaintiff's claims of excessive force to be a "visible fiction."

In sum, even with the benefit of the video, there is a genuine dispute of fact as to whether defendants Amenta and Bashaw used excessive force in removing the plaintiff from his cell.   That being said, the video does make it clear that defendant Houle was stationed in the doorway and did not use any physical force, excessive or otherwise, on the plaintiff.   The motion for summary judgment should therefore be allowed on Count I as to defendant Houle, but denied as to defendants Amenta and Bashaw.

B. <u>Count II – Medical Indifference</u>

The plaintiff alleges that defendants Houle and Doher were deliberately indifferent to his medical needs because they knew that he suffered from asthma but nonetheless approved the use of a chemical agent as part of the use of force plan. The court recommends that the defendants be granted summary judgment on this claim.

"In order to prove an Eighth Amendment violation based on inadequate medical care, a prisoner must satisfy '(1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need.'" *Reaves v. Department of Correction*, 195 F. Supp. 3d 383, 407 (D. Mass. 2016)(*quoting Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014)). To satisfy the objective prong of the inquiry, the plaintiff must have a serious medical need, that is, one that has been diagnosed by a physician or is so obvious that it requires treatment, and must show that the care provided by the prison was not "adequate as measured against prudent professional standards." *Nunes v. Massachusetts Dept. of Correction*, 766 F.3d 136, 142 (1st Cir. 2014)(internal citations omitted). "[E]ven if medical care is so inadequate as to satisfy the objective prong, the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." *Kosilek*, 774

14

F.3d at 83 (*citing Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). "Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Chapman v. Finnegan*, 950 F. Supp. 2d 285, 297 (D. Mass. 2013)(*quoting Estelle*, 429 U.S. at 104-05).

In this case, even assuming *arguendo* that exposing the plaintiff to a one-second burst of the OC fogger could give rise to a viable Eighth Amendment medical indifference claim in light of the plaintiff's asthma, there is no evidence that the defendants were indifferent to the plaintiff's needs or were aware that the use of the chemical agent here could create a substantial risk of serious harm. *See Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 65 (1st Cir. 2002)(plaintiff claiming deliberate indifference must show that each defendant had "knowledge of facts from which the official [could have drawn] the inference that a substantial risk of serious harm exist[ed]"); *Burrell v. Hampshire County*, 307 F.3d 1, 8 (1st Cir. 2002)("Prison officials cannot be indifferent, of course, if they are unaware of the risk."). On the contrary, the undisputed facts show that the defendants consulted with and relied on the guidance of the facility's Medical Director, who advised the forced removal team that there were no medical contraindications to the use of chemical agents on the plaintiff,

15

except that an OC fogger should be used for someone with his condition.  The officers were entitled to rely on this medical guidance and it moreover demonstrates that they did not act with deliberate indifference to the plaintiff's condition.  *See Hennessey v. Dennehy*, No. 08-cv-11724-NG, 2010 WL 3464234, at *8 (D. Mass. Sept. 1, 2010) (finding summary judgment appropriate because "prison officials are generally entitled to rely on the opinions of the medical professionals who treat the prisoner")(*citing Layne v. Vinzant*, 657 F.2d 468, 471-72 (1st Cir. 1981)); *see also Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008)("[P]rison officials who are not medical professionals are entitled to rely on the opinions of medical professionals.").  In that regard, the video does not depict the plaintiff to ever be in a state of distress, and shows that he afterwards interacted and spoke with a medical worker, voiced no medical concerns relating to his asthma, declined to take a shower to rinse off the agent, and thereafter was transferred to another cell.

The plaintiff does not dispute any of these propositions and indeed does not address the defendants' argument for summary judgment on this count in his opposition.  Summary judgement should therefore enter for defendants Houle and Doher on Count II.[1]

---

[1] For the same reasons, Count II would fail against defendant Vidal on the merits assuming proper service had been made.

### C. **Count III – Supervisory Liability (Houle)**

Count III alleges that defendant Houle "tacitly authorized, condoned, and encouraged" the excessive use of force on the plaintiff.  It is undisputed that defendant Houle did not actually touch the plaintiff during the removal but he was at all relevant times a Sergeant who was responsible for overseeing the planned use of force team.  In the Eighth Amendment context, supervisory liability under section 1983 typically arises where "the supervisor [was the] primary violator or direct participant in the rights-violating incident. . ." *Stone v. Caswell*, 963 F. Supp. 2d 32, 35-36 (D. Mass. 2013)(*quoting Sanchez v. Pereira-Castillo*, 590 F.3d 41, 49 (1st Cir. 2009)).  "Absent participation in the challenged conduct, a supervisor may be held liable for constitutional violations only if (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmative[ly] link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence [of the supervisor] amounting to deliberate indifference." *Chapman v. Finnegan*, 950 F. Supp. 2d 285, 294 (D. Mass. 2013)(*quoting Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008)).  Applied here, in order for supervisory liability to attach, the plaintiff must show that (1) defendants Amenta and/or

Bashaw violated his constitutional rights and (2) defendant Houle encouraged, condoned or acquiesced in their actions.

Considering the evidence in a light most favorable to the plaintiff, a factfinder concluding that defendants Amenta and Bashaw used excessive force to remove the plaintiff could also reasonably conclude that defendant Houle, by his presence and failure to intervene, encouraged, condoned or acquiesced in his subordinates' conduct.  Summary judgment is therefore not appropriate on this count.  *See Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 73 (1st Cir. 2016)(upholding denial of summary judgment on supervisory liability claim for failing to intervene where summary judgment was also denied on excessive force claim); *Holloman v. Clarke*, 208 F. Supp. 3d 373, 376 (D. Mass. 2016)(correction officers found liable under theory of supervisory liability where they watched officer beat detainee and failed to intervene); *see also Smith v. Mensinger*, 293 F.3d 641, 650 (3rd Cir. 2002)("a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so"); *Gailor v. Armstrong*, 187 F. Supp. 2d 729, 736-37 (W. D. Ken. 2001)(same).

D. **Count IV – Supervisory Liability (Doher)**

Count IV alleges that defendant Doher failed to train newly hired corrections officers and failed also to train his

subordinates on the proper use of force when executing a use of
force plan.   It is undisputed that defendant Doher was at all
relevant times a Captain who oversaw the prison's "Special
Management Unit," including defendants Houle, Bashaw and Amenta.
A supervisor may be liable under section 1983 for failing to train
his subordinates where the failure to train "amounts to deliberate
indifference to the rights of persons with whom [the correction
officers] come into contact." *Whitfield v. Melendez-Rivera*, 431
F.3d 1, 9-10 (1st Cir. 2005)(*quoting City of Canton v. Harris*, 489
U.S. 378, 388 (1989)).   To succeed on a failure to train theory,
a plaintiff must establish that the particular officers who
committed the violation were not adequately trained and that the
failure in training was at least a partial cause of the ultimate
injury.  *Id.* at 10; *see also Young v. City of Providence,* 404 F.3d
4, 26-29 (1st Cir. 2005)("any proper allegation of failure to train
... must allege that [the officer's] lack of training caused him
to take actions that were objectively unreasonable and constituted
excessive force" and that "the identified deficiency in [the
training program was] closely related to the ultimate injury.").
This is "ordinarily demonstrated by adducing a pattern of similar
constitutional violations by untrained employees." *Turkowitz v.
Town of Provincetown*, 914 F. Supp. 2d 62, 77 (D. Mass. 2012).

Here, even assuming that officers used excessive force on
him, the plaintiff cannot meet the high hurdle established by the

"deliberate indifference" standard to show that the excessive force was the result of inadequate training.  For one, the plaintiff has not adduced any evidence that any officer was inadequately trained, or pointed to any evidence in the record demonstrating that defendant Doher had "actual or constructive notice that a particular omission in [his] training program cause[d] [his] employees to violate the [plaintiff's] constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  Similarly, where the plaintiff has adduced no evidence that officers have behaved similarly in the past, there is no evidence of "a pattern of similar constitutional violations" due, at least in part, to a lack of proper training. *Turkowitz*, 914 F. Supp. 2d at 77.  Summary judgment therefore should enter in defendant Doher's favor on Count IV.[2]

**E. Qualified Immunity**

Finally, the defendants argue that they should be entitled to qualified immunity assuming they violated any of the plaintiff's constitutional rights.  Qualified immunity serves as a shield to government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It does

---

[2] Count V would also fail on the merits against defendant Vidal for the same reasons.

not, however, shield public officials who, from an objective standpoint, should have known that their conduct was unlawful. *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011). Courts use a two-part test to determine whether qualified immunity applies: (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right; and if so (2) whether the right was clearly established at the time of the alleged violation. *MacDonald v. Town of Eastham*, 745 F.3d 8, 11 (1st Cir. 2014).

Here, and as noted above, there is a genuine dispute of material fact as to whether defendants Bashaw and Amenta used excessive force in forcibly removing the plaintiff from his cell, as well as whether defendant Houle endorsed or condoned their conduct when he failed to intervene. At the time of the removal in 2015, the law was clearly established that a prison official could not use excessive force on an inmate for the sole purpose of causing harm. *See Perry*, 125 F. Supp. 3d at 298 ("It was clearly established in 2010 that a prison official may not inflict unnecessary and wanton pain and suffering by using force against an inmate maliciously and sadistically for the very purpose of causing harm."); *Nascarella v. Cousins*, No. 13-cv-10878-IT, 2015 WL 1431054, at *6 (D. Mass. Mar. 27, 2015)("Eighth Amendment precedent predating July 3, 2012, clearly prohibits the unjustified use of force against prisoners."). The same holds true for defendant Houle's duty to intervene. *See Torres-Rivera*

*v. O'Neill-Cancel*, 406 F.3d 43, 55 (1st Cir. 2005)(holding that officer was not entitled to qualified immunity "because the law was clearly established in 1998 than an officer [witnessing another officer use excessive force on a detainee] . . . had a duty to intervene").   The defendants therefore are not entitled to qualified immunity on Counts I and III.

## VI.   CONCLUSION

For the foregoing reasons, the court respectfully recommends that the Defendants' Motion for Summary Judgment (Dkt. No. 42) be GRANTED IN PART and DENIED IN PART.   Specifically:

Summary judgment should be GRANTED on Count I in favor of defendant Houle, but DENIED with respect to defendants Bashaw and Amenta;

Summary judgment should be GRANTED on Counts II and IV; and

Summary judgment should be DENIED on Count III.

In addition, the entire complaint should be dismissed as it relates to defendant Vidal (Counts II and V).

The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.   The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis

for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, U.S.M.J.

DATED:  February 13, 2018